IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANGELLEE A. HARTMAN, :

    Plaintiff, :

vs. : CA 13-00005-C

CAROLYN W. COLVIN, :
Acting Commissioner of Social Security,
                                                                    :

    Defendant.

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (doc. 12), the Plaintiff's brief (doc. 13), the Commissioner's brief (doc. 14), and the arguments presented at the August 21, 2013 hearing, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* doc. 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

## I. Procedural Background

On or around October 23, 2009, the Plaintiff filed an application for SSI (R. 128-131), alleging that she became disabled on February 11, 2009, when she sustained injuries to her left knee, neck and back in a motor vehicle accident, (*see* R. 55, 161-68). Her application was initially denied on April 6, 2010, (R. 77-79). A hearing was then conducted before an Administrative Law Judge on June 8, 2011. (R. 49-67). On June 17, 2011, the ALJ issued a decision finding that the claimant was not disabled (R. 33-45), and, on July 25, 2011, the Plaintiff sought review from the Appeals Council, (R. 27-29). On November 14, 2012, the Appeals Council issued a decision declining to review the ALJ's decision. (R. 1-3.) Therefore, the ALJ's determination was the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 404.981. The Plaintiff filed a Complaint in this Court on January 9, 2013. (Doc. 1.)

## II. Standard of Review and Claims on Appeal

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although at the fourth step "the [plaintiff] bears the burden of demonstrating an inability to return to his [or her] past relevant work, the

[Commissioner of Social Security] has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny Plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the Plaintiff asserts two claims:

1. The Commissioner erred in failing to find Ms. Hartman disabled based upon meeting the requirements for presumptive disability at ¶12.05C of the Listings[; and]

2. The Commissioner erred in basing her decision upon a hypothetical question which failed to fairly and accurately describe Ms. Hartman's vocational limitations.

(Doc. 13 at 2.) Because the Court determines that the decision of the Commissioner should be reversed and remanded for further proceedings based on the Plaintiff's first claim, regarding presumptive disability under ¶12.05C of the Listings, there is no need for the Court to consider the Plaintiff's second claim. *See Robinson v. Massanari*, 176 F. Supp. 2d 1278, 1280 & n.2 (S.D. Ala. 2001); *cf. Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th

Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

### III. Analysis

To establish presumptive disability under section 12.05(C), a claimant must present evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C). In addition, while the plaintiff must "also satisfy the 'diagnostic description' of mental retardation in Listing 12.05[,]"[2][3] *Cooper v. Commissioner of Soc. Sec.*, 217 Fed. App'x 450, 452 (6th Cir. 2007) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)), the law in this Circuit is clear that where, as here, a claimant has presented a valid IQ score of 60 to 70, she is entitled to the presumption that she manifested deficits in adaptive functioning before the age of 22, *see Hodges v. Barnhart*, 276 F.3d 1265, 1266, 1268-1269 (11th Cir. 2001).

This presumption is rebuttable, but the Commissioner is charged with the task of determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. *See Grant v. Astrue*, 255 Fed. App'x 374, 375 (11th Cir. 2007) (per

---

[2] "[Mental retardation] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05. "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." *Fischer v. Barnhart*, 129 Fed. App'x 297, 301-02 (7th Cir. 2005) (citation omitted).

[3] Listing 12.05 was amended on August 1, 2013, to replace the words "mental retardation" with "intellectual disability." *See* 78 Fed.Reg. 46,499, 46,501 (codified at 20 C.F.R. pt. 404, subpt. P, app. 1). "The Social Security Administration stated that the change 'does not affect the actual medical definition of the disorder or available programs or services.'" *Hickel v. Comm'r of Soc. Sec.*, 539 Fed. App'x 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed.Reg. 46,500). As in *Hickel*, the undersigned uses the old term "mental retardation" throughout this opinion to avoid confusion because it is the term used by the parties and the ALJ.

4

curiam). For example, in *Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992), the Eleventh Circuit recognized that a valid IQ score is not necessarily conclusive of mental retardation where the score is inconsistent with other evidence of claimant's daily activities, *see id.* at 837. Specifically, in the context of 12.05(C), the Eleventh Circuit held:

> To establish a disability under section 12.05(C), a claimant must present evidence of a valid verbal, performance, or full-scale I.Q. score of between 60 and 70 inclusive, and of a physical or other mental impairment imposing additional and significant work-related limitation of function. See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C) (1992). . . .
>
> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. *See Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985). This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (rejecting a claim of section 12.05(C) mental retardation where the claimant's I.Q. score of 69 was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher).

*Id.* at 837; *see also Grant*, 255 Fed. App'x at 375 ("The mental retardation Impairment Listing in § 12.05C requires the claimant to demonstrate a 'significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22,' as well as a 'valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.'") (quoting §§ 12.00A, 12.05, 12.05(C)).

5

Here, the ALJ acknowledged that the Plaintiff received a valid Full Scale IQ score of 70. (R. 37.) Furthermore, the ALJ determined that, in addition to Plaintiff's cognitive impairments, the Plaintiff had the following other severe impairments: "depression/dysthymic disorder, obesity, and back, neck, and bilateral knee injuries status post motor vehicle accident." (*Id.* at 35.) Such severe impairments satisfy the paragraph C criterion of physical or other mental impairments imposing an additional and significant work-related limitation of function. *Hogue v. Colvin*, CA No. 2:13-00375-N, 2014 WL 1744759, at *5 (S.D. Ala. April 30, 2014) (citing *Edwards*, 755 F.2d at 1517; *Grigsby v. Astrue*, No. CV 11-06355-MAN, 2012 WL 3029766, at *4 (C.D. Cal. July 24, 2012). Thus, the Plaintiff was entitled to a rebuttable presumption of deficits in adaptive functioning under Listing 12.05(C). *Grant*, 255 Fed. App'x at 375 ("[T]he ALJ found, and the Commissioner does not dispute, that [Plaintiff] had a valid IQ score of 69 and that she possessed a physical or mental impairment imposing an additional and significant work-related limitation of function. She was therefore entitled to the benefit of the rebuttable presumption established in *Hodges*, and the ALJ was charged with determining whether there was sufficient evidence to rebut that presumption."); *Lowery*, 979 F.2d at 837. The ALJ, however, erred by failing to apply the rebuttable presumption of disability in the Plaintiff's favor. (R. 36-39.) Despite recognizing a valid IQ score between 60 and 70 and finding that the Plaintiff had another severe impairment, the ALJ failed to discuss or even reference Listing 12.05(C). (*Id.*)

Rather than specifically address the paragraph C criteria of Listing 12.05 and apply the rebuttable presumption in the Plaintiff's favor, as the ALJ was required to do, the ALJ discussed the adaptive functioning requirements in the introductory paragraph of Listing 12.05 and considered the paragraph D criteria of Listing 12.05. (*Id.*) With

6

regard to the adaptive functioning requirements in the introductory paragraph of Listing 12.05, the ALJ stated as follows:

> The claimants mental impairments, considered singly and in combination, do not meet or medically equal the criteria of . . . 12.05 (mental retardation). The opening paragraph of listing 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." The undersigned notes that the Diagnostic and Statistical Manual of Mental Disorders – 4th Edition (DSM – IV), states in relevant part: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning [ ] that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. . . . Mental retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning. . . . Impairments in adaptive functioning, rather than a low IQ, are usually the presenting symptoms in individuals with Mental Retardation. Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting."
>
> The undersigned has considered the evidence as a whole in light of the above quoted material regarding mental retardation, adaptive functioning and the skill areas related to adaptive functioning. In this case, the claimant does not have deficits in adaptive functioning necessary to be diagnosed with mental retardation and meet the mental retardation listing. The evidence in this case demonstrates that the claimant functions independently and that she engages in a wide array of daily living activities. She is able to take care of her own personal needs such as bathing and grooming. (Hearing testimony and Exhibit 4E). She was able to pass the driver's license test (reportedly on the 7th try), and is able to drive. (Id). She reports that her mom has custody of her children, but that she helps them get ready in the morning and drives them to school and daycare. (Id). She is able to prepare sandwiches, frozen dinners, and "full meals," and she does so four times a week. (Id). She performs household chores such as dishes, laundry, vacuuming, and sweeping. (Id). She grocery shops, and is able to pay bills, count change, and handle a savings account. (Id). She enjoys watching television, reading, and attending movies. (Id). She talks to others over the telephone on a regular basis and enjoys going to yard sales. (Id). She also spends time with her mom and sister. (Id). She admits that she can follow written instructions as long as they are "simple basic instructions" and that she can follow spoken instructions "very good." (Id). She reports that she gets along well with authority figures, and that she has never been fired or laid off from a job

7

> because of problems getting along with others. (Id). She was in special education classes in school, but she received a certificate of completion and her school record reflects that she had a 3.18 GPA and a class rank of 31 of 193. (Hearing testimony and Exhibit 1E). She reportedly struggled performing work as a sandwich maker and a clothing presser, but she admits that she left both of these jobs for reasons unrelated to her psychological impairments. (Hearing testimony).
>
> The claimant's lack of adaptive functioning deficits is supported by assessments from two acceptable medical sources. Dr. Witchard administered the WAIS-III, which resulted in a valid Full Scale IQ of 70, but she did not diagnose the claimant with mental retardation because "her use of language, reported academic history, and response to mental status items" demonstrated that "her level of intellectual functioning appears to be in the Borderline range of ability." (Exhibit 3F). In addition, Dr. Hinton noted that the claimant's "daily activities do not support a functional cognitive level in the mentally retarded range, she has at least borderline intelligence." (Exhibit 4F). The undersigned has given the assessments of Dr. Witchard and Dr. Hinton great weight because they are consistent with the longitudinal record as set forth above. The undersigned notes that the record is void of assessments from any acceptable medical source who has diagnosed the claimant with mental retardation or opined that her impairments meet or equal the mental retardation listing.

(R. 36-37.) As stated above, the ALJ also considered the paragraph D criteria. The ALJ concluded that the Plaintiff did not meet the paragraph D criteria because she had only mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no extended episodes of decompensation. (*Id.* at 37-39.) Quite significantly, however, the ALJ completely ignored the paragraph C criteria. (*Id.* at 36-39.) The ALJ's failure to acknowledge the applicability of Listing 12.05(C) and afford the Plaintiff the rebuttable presumption of deficits in adaptive functioning was clear error because the Plaintiff met both of the requirements in paragraph C. *Hogue v. Colvin*, 2014 WL 1744759, at *5 (finding that the ALJ's failure to address 12.05C and apply the rebuttable presumption constituted error requiring remand where the Plaintiff had a valid IQ score between 60 and 70 and the ALJ found that the Plaintiff had other severe

impairments); *Frank v. Astrue*, No. CA 2:11-00215-C, 2011 WL 6111692 (S.D. Ala. Dec. 8 2011) (same).

The Commissioner argues that any error on the part of the ALJ was harmless because "the ALJ articulated multiple valid reasons to rebut [the] presumption [of deficits in adaptive functioning]." (Doc. 14 at 10.) The Commissioner's argument is unconvincing. First, as stated above, the ALJ never afforded the Plaintiff the presumption in her favor and, therefore, the ALJ never found that her findings regarding the Plaintiff's adaptive functioning skills were sufficient to rebut or overcome the presumption of deficits. (R. 36-39.) Rather, the ALJ simply concluded, without considering the paragraph C criteria, that the Plaintiff's adaptive functioning skills were not indicative of mental retardation. (*Id.*) The ALJ applied the wrong standard, s*ee Grant*, 255 Fed. App'x at 375 (concluding that the ALJ applied the wrong legal standard because the ALJ did not afford the Plaintiff the benefit of the presumption of deficits), and

> [t]he harmless error doctrine does not permit a reviewing court to usurp an administrative agency's function by engaging in a determination that "the agency alone is authorized to make and which it has not made;" instead, in such cases, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) ("We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making." (footnote and citation omitted)); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (holding that a reviewing court must not make findings of fact, reweigh the evidence, or substitute its judgment for that of the ALJ).

*Bush v. Colvin*, Civil Act. No. 2:13-cv-50-CSC, 2014 WL 2158427, at *7 (M.D. Ala. May 23, 2014).

Second, it is far from clear that, if the ALJ had applied the correct standard, her findings regarding the Plaintiff's adaptive functioning skills would support the

9

determination that the Plaintiff did not meet Listing 12.05(C). Evidence of daily activities indicative of independent living is not inconsistent with an IQ score in the 60-70 range. *Frank*, 2011 WL 6111692, at *6 (citing *Alday v. Astrue*, No. 5:08cv217-SPM/WCS, 2009 WL 347722, at *3-7 (N.D. Fla. Feb. 11, 2009); *Black v. Astrue*, 678 F. Supp. 2d 1250, 1261 (N.D. Fla. 2010)).

> The caselaw addressing the "adaptive functioning" aspect of Listing 12.05C suggests that the adaptive functioning must be significantly inconsistent with the I.Q. score.[4] An ability to do simple daily activities and simple jobs is not enough. As noted in *Lowery*, in *Popp* the court sustained the ALJ's rejection of a claim of equivalency to Listing 12.05C because the claimant's I.Q. score of 69 was "inconsistent with evidence that [the claimant] had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher." 979 F.2d at 837, citing *Popp*, 779 F.2d at 1499. Additionally, there was evidence in *Popp* that the claimant had "tended to place himself in a very unfavorable light," thereby rendering the personality test scores (the MMPI, not the I.Q. test) invalid in the opinion of the examiner. *Popp*, 779 F.2d at 1498-1499, 1500.
>
> *Popp* is perhaps the strongest case for finding that an I.Q. score below 70 does not necessarily meet Listing 12.05C. There are several others with facts somewhat like *Popp*. *Bischoff v. Astrue*, 2008 WL 4541118 (S.D. Fla. Oct. 9, 2008) (No. 07-60969-CIV), affirmed the determination that Listing 12.05C was not met. The court noted that while the claimant's I.Q. scores were lower than 70, the claimant had previously worked as a parts manager and as an automobile mechanic, jobs which required technical knowledge and skills, and he successfully supervised other people for five years. *Id*., at *20. There was also evidence that the claimant was "faking" his I.Q. score, and gave conflicting reports that he had finished only the sixth, or seventh, or eighth, or ninth, or tenth grades, or had a G.E.D., or had vocational training. *Id.*

---

[4] *See also Siron v. Comm'r of Soc. Sec. Admin.*, No. 13-10441, 556 Fed. App'x 797, 799 (11th Cir. Feb. 18, 2014) ("[T]he evidence presented in cases where we affirmed an ALJ's rejection of an IQ score overwhelmingly indicated that the claimant was not mentally retarded and likely attempted to tailor results to effect a desired outcome[.]"). *But see Hickel*, 539 Fed. App'x at 984 (concluding that substantial evidence supported the ALJ's determination that the plaintiff did not meet Listing 12.05, despite an IQ score of 63, where the plaintiff was "a high school graduate, she work[ed] part time at a nursery, she dr[ove] herself to work, she [could] prepare simple meals and dress and groom herself, she attend[ed] church regularly, and she socialize[d] with friends.")

*Monroe v. Astrue*, 726 F. Supp. 2d 1349, 1355 (N.D. Fla. 2010).

Here, the evidence demonstrates that, although the Plaintiff had a high school GPA of 3.18 and a class rank of 31 of 193, she was in special education classes and never received a high school diploma. (R. 54-55, 149.) Instead, she received a certificate of attendance. (*Id.* at 54, 149.) She has worked two jobs—one pressing clothes for a dry cleaner and the other assembling hamburgers at a fast food restaurant. (*Id.* at 55.) The Plaintiff testified that she obtained the job at the fast food restaurant because a mental health caseworker first contacted the restaurant on her behalf. (*Id.* at 60-61.) As a clothes presser and as a hamburger assembler, the Plaintiff needed assistance from other employees. (*Id.* at 59-61.) At the fast food restaurant, the food orders were displayed on a monitor and another employee needed to read her the orders. (*Id.* at 61.) Neither job was performed at substantial gainful activity levels. (*Id.* at 43.) The Plaintiff lives with her mother and her three children, but her mother has custody of her children. (*Id.* at 37, 56.) The Plaintiff is able to prepare meals and perform household chores, such as laundry, vacuuming and sweeping. (*Id.* at 37.) She is able to shop, pay bills, count change and handle a savings account. (*Id.*) She has a driver's license and is able to drive, but she needed seven attempts to pass the driver's test. (*Id.*)

Thus, the evidence of record and the ALJ's findings regarding adaptive functioning are not necessarily inconsistent with the Plaintiff's IQ score of 70. Notably, the Plaintiff has no history of managing or supervising other workers, and she has no history of skilled or semi-skilled labor. The evidence suggests that the Plaintiff had difficulty with unskilled work. Furthermore, her academic history demonstrates that her high school classes were within the special education program and she had no academic or technical training following high school. Additionally, the Commissioner presented no evidence that the Plaintiff manipulated her IQ score to misrepresent her

level of intelligence. For those reasons, this case appears to be distinguishable from the cases in this Circuit where courts affirmed an ALJ's determination that Listing 12.05(C) was not met despite IQ scores in the 60 to 70 range. *See Perkins v. Comm'r, Soc. Sec. Admin.*, No. 13-12024, 553 Fed. App'x 870, 873 (11th Cir. Jan. 22, 2014) (affirming that Listing 12.05(C) was not met where the plaintiff performed skilled jobs, managed other workers, and made contradictory claims regarding his education and employment history); *Popp*, 779 F.2d at 1499 (affirming that Listing 12.05(C) was not met where the plaintiff had worked skilled jobs, obtained a college degree and exaggerated his deficits when examined); *Brown v. Astrue*, No. CV608-036, 2009 WL 2135005, at *5 & n.5 (S.D. Ga. Jul 15, 2009) (affirming that Listing 12.05(C) was not met where the plaintiff had a history of performing skilled work and supervising other workers); *Lyons v. Astrue*, No. 2:08-cv-614-FtM-29SPC, 2009 WL 1657388, at *10-11 (M.D. Fla. Jun 10, 2009) (affirming that Listing 12.05(C) was not met where the plaintiff received a high school diploma, was not enrolled in special education classes, and malingered during testing); *Bischoff*, 2008 WL 4541118, at *20 (affirming that Listing 12.05(C) was not met where the plaintiff held managerial positions and jobs requiring technical knowledge and skills and the ALJ found that he was faking his deficits); *Davis v. Astrue*, Civil Action No. 2:07cv880-TFM, 2008 WL 2939523, at *3 (M.D. Ala. Jul 25, 2008) (affirming that Listing 12.05(C) was not met where the plaintiff had a history of semi-skilled work and received vocational training in cosmetology and secretarial skills).

In any event, the record is certainly not clear that the presumption of deficits in adaptive functioning, to which the Plaintiff is entitled, is rebutted by the evidence of record, and the undersigned declines to make such a determination when the ALJ failed to do so. As discussed above, this case must be reversed and remanded due to the ALJ's failure to consider Listing 12.05(C) and apply the correct legal framework.

## IV. Conclusion

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE and ORDERED** this the 7th day of July 2014.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**